RENDERED:  OCTOBER 10, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-1358-MR

PRESERVE MADISON COUNTY CO.                                    APPELLANT


APPEAL FROM MADISON CIRCUIT COURT
v.          HONORABLE COLE ADAMS MAIER, JUDGE
ACTION NO. 24-CI-00468


MADISON COUNTY BOARD OF
ADJUSTMENTS; MADISON
COUNTY FISCAL COURT;
MADISON FARM, LLC; AND
REVOLUTION HOLDINGS, LLC                                       APPELLEES


OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE:  THOMPSON, CHIEF JUDGE; ACREE AND McNEILL, JUDGES.

THOMPSON, CHIEF JUDGE:  Preserve Madison County Co. appeals from an

order of the Madison Circuit Court which dismissed its complaint against the

Madison County Board of Adjustments and other appellees.  The trial court held

that it lacked jurisdiction over the case. We believe that the trial court erred in concluding it lacked jurisdiction and reverse and remand.

## FACTS AND PROCEDURAL HISTORY

In September of 2023, the Madison County Fiscal Court approved amended land use regulations which included a provision authorizing the construction and operation of large-scale bourbon distilleries and bourbon barrel storage facilities as conditional uses in its agricultural district. On February 19, 2024, Revolution Holdings, LLC applied for a conditional use permit on property owned by Madison Farm, LLC to construct and operate a 500,000-bourbon barrel storage facility, large scale distillery, restaurant, and entertainment complex for weddings and meetings at 1776 Jacks Creek Road and 2274 Tates Creek Road. At the time, the existing land use and zoning classification for both properties was agricultural.

The Madison County Board of Adjustments is the public entity that hears applications for conditional use permits and decides whether to grant them. The Board held a public hearing on the permit application on March 21, 2024, and members of the community spoke about their concerns regarding the building of the bourbon barrel facility. On May 23, 2024, the Board granted the application for the permit.

On June 21, 2024, Appellant filed the underlying complaint and raised multiple claims regarding the granting of the permit. Appellant wanted the court to void the permit and the regulation allowing the bourbon distillery conditional land use. Appellant is a non-profit organization made up of residents and farmers in Madison County. Appellant and its members want Madison County to maintain its agricultural status. Appellant brought its complaint pursuant to Kentucky Revised Statutes (KRS) 100.347(1), which stated:

> Any person or entity **claiming to be injured or aggrieved** by any final action of the board of adjustment shall appeal from the action to the Circuit Court of the county in which the property, which is the subject of the action of the board of adjustment, lies. Such appeal shall be taken within thirty (30) days after the final action of the board. All final actions which have not been appealed within thirty (30) days shall not be subject to judicial review. The board of adjustment shall be a party in any such appeal filed in the Circuit Court.

(Emphasis added.)[1] Appellant also raised declaration of rights claims against the Board and the Fiscal Court.

On July 26, 2024, Revolution Holdings filed a motion to dismiss pursuant to Kentucky Rules of Civil Procedure (CR) 12.02.[2] Revolution Holdings argued that the trial court lacked jurisdiction over Appellant's claims because

---

[1] This statute was amended in 2025. The amended version will be discussed later in this Opinion.

[2] The rest of the appellees eventually joined the motion to dismiss.

Appellant did not articulate sufficient facts to show that it had been "injured or aggrieved" by the Board's actions. In addition, Revolution Holdings filed a counterclaim against Appellant alleging abuse of process, malicious prosecution, and defamation.

Appellant responded to the motion to dismiss and argued that it had sufficiently pleaded that it was injured or aggrieved by the Board. Appellant argued that it only needed to use the phrase "injured or aggrieved" in the complaint in order to properly invoke the court's jurisdiction. Alternatively, Appellant argued that it did list specific facts showing injury. Appellant also sought to amend its complaint. As for the counterclaim, Appellant denied the claims raised and moved for expedited relief. Pursuant to the Uniform Public Expression Protection Act found in KRS 454.460 *et seq.*, a person or entity being sued based on the exercise of free speech and certain other Constitutional rights, or communications made in a governmental proceeding or issues under consideration by governmental bodies, can motion for dismissal under an expedited timetable. KRS 454.464. If successful, that party may also be awarded attorney fees and litigation costs. KRS 454.478.

On October 10, 2024, a hearing on the motion to dismiss was held. On October 14, 2024, the trial court entered an order granting the motion to dismiss. The court held that it "lacks jurisdiction to hear the case and Appellant's

Motion to Amend the Complaint is denied for lack of jurisdiction. All of Appellant's appeals and claims against Appellees . . . shall be **DISMISSED** with prejudice. All counterclaims and pending motions are subsequently **MOOT** due to lack of jurisdiction." (Emphasis in original.) This appeal followed.

## STANDARD OF REVIEW

We review a CR 12.02 motion to dismiss under the *de novo* standard. *Fox v. Grayson*, 317 S.W.3d 1, 7 (Ky. 2010). In addition, we also review issues of statutory interpretation *de novo*. *Commonwealth v. Long*, 118 S.W.3d 178, 181 (Ky. App. 2003).

## ANALYSIS

Before we address the issues raised by Appellant, we will first address an argument made by Revolution Holdings. Revolution Holdings argues that this appeal is moot due to the amended version of KRS 100.347(1). The current version of KRS 100.347(1) states in relevant part:

> Any person or entity claiming to be injured or aggrieved by any final action of the board of adjustment **and that owns real property** within the same zone where the property that is the subject of the final action is located shall appeal from the action to the Circuit Court of the county in which the property that is the subject of the action of the board of adjustment lies.

(Emphasis added.)  Revolution Holdings argues that Appellant is an organization and does not own property in Madison County; therefore, it cannot appeal the final decision of the Board based on the new language added to the appeal statute.

We disagree with Revolution Holdings' argument.  At the time Appellant filed its complaint, the requirement for owning real property was not a part of the statute.

> Kentucky law prohibits the amended version of a statute from being applied retroactively to events which occurred prior to the effective date of the amendment unless the amendment expressly provides for retroactive application.  This is a very fundamental principle of statutory construction in Kentucky.  The courts have consistently upheld this admonition and have declared there is a strong presumption that statutes operate prospectively and that retroactive application of statutes will be approved only if it is absolutely certain the legislature intended such a result.  This is particularly true when the legislation is substantive and not remedial, and new rights and new duties are created.

*Commonwealth Dep't of Agriculture v. Vinson*, 30 S.W.3d 162, 168 (Ky. 2000) (citations omitted).  Here, the statute does not state that it should apply retroactively and there is no evidence that the legislature intended such a result; therefore, Revolution Holdings' argument is without merit.

We now turn to Appellant's arguments that it has raised on appeal. Appellant's first argument is that the court erred when it held that it did not have jurisdiction to hear the case.  While the order itself does not mention why the court

reached this conclusion, the arguments made before the court and statements made by the trial judge during the hearing indicate that the court believed Appellant did not strictly follow the requirements of KRS 100.347(1) in order for it to have jurisdiction over the appeal. The court did not think Appellant provided sufficient facts indicating it was injured or aggrieved.

We begin our analysis of this argument with a brief discussion on the difference between subject matter jurisdiction and particular-case jurisdiction. In the motion to dismiss, Appellees argued the court lacked subject matter jurisdiction over the case because Appellant did not comply with the statutory requirement. Appellees did not mention particular-case jurisdiction.

> Subject matter jurisdiction of each Court within the Court of Justice is established by the constitutional provisions and statutes assigning to the courts specific types of claims and causes of action ("kinds of cases").
>
> We have often noted . . . that subject matter jurisdiction does not mean this case but *this kind of case.* We also . . . explained that a court is deprived of subject matter jurisdiction only where that court has not been given, by constitutional provision or statute, the power to do anything at all. To determine subject matter jurisdiction, the pleadings should be examined and taken at face value. The court has subject matter jurisdiction when the kind of case identified in the pleadings is one which the court has been empowered, by statute or constitutional provision, to adjudicate.

*Daugherty v. Telek*, 366 S.W.3d 463, 466-67 (Ky. 2012) (emphasis in original) (internal quotation marks, footnotes, and citations omitted).

On the other hand, particular-case jurisdiction refers to the authority and power of the court to decide a *specific* case, rather than the class of cases over which the court has subject-matter jurisdiction. This kind of jurisdiction often turns solely on proof of certain compliance with statutory requirements and so-called jurisdictional facts[.] In brief, it has been our frequent holding that errors in the procedural invocation of a court's jurisdiction relate to particular-case jurisdiction, not general subject-matter jurisdiction[.]

*Louisville Historical League, Inc. v. Louisville/Jefferson Cnty. Metro Government*, 709 S.W.3d 213, 221-22 (Ky. 2025) (emphasis in original) (internal quotation marks and citations omitted).

Appellant argues that Appellees only argued about a lack of subject matter jurisdiction and did not discuss particular-case jurisdiction. Appellant claims that if it failed to follow the requirements of KRS 100.347(1), that involves particular-case jurisdiction and not subject matter jurisdiction. Further, Appellant argues that particular-case jurisdiction can be waived, and by not raising the issue before the trial court, Appellees waived it.

We agree with Appellant that if it failed to allege that it had been injured or aggrieved as required by the statute, this would implicate particular-case jurisdiction. KRS 23A.010(4) gives circuit courts subject matter jurisdiction over decisions of administrative agencies, like the Board, and KRS 100.347(1) specifically gives circuit courts subject matter jurisdiction over decisions made by boards of adjustment. The arguments and conclusions made surrounding

Appellant's jurisdictional issues do not indicate the Madison Circuit Court could not hear a Board appeal at all, merely that it could not hear this particular Board appeal because of a failure to follow statutory requirements.

Appellant is correct that issues surrounding particular-case jurisdiction can be waived, *Louisville Historical League, Inc.*, 709 S.W.3d at 223; however, we do not believe it was waived here. While Appellees may have used the term subject matter jurisdiction when it moved to dismiss the case, it is clear that they were arguing about particular-case jurisdiction. Appellees' argument revolved around Appellant's errors in "procedural invocation of a court's jurisdiction[.]" *Id.* at 222. That is particular-case jurisdiction.

We now move on to the primary question of this appeal, did the circuit court have particular-case jurisdiction? Appellant claims that it did. Appellant argues that all it had to do was state that it was "injured or aggrieved" by the Board's decision, and it was not required to state particular facts indicating said injuries. Appellant used the phrase "injured or aggrieved" twice in its complaint. In the alternative, Appellant argues that even if it was required to state particular facts showing it was injured or aggrieved, it did so. We must decide if Appellant was required to state particular facts indicating how it was injured or aggrieved, and if so, did Appellant meet this requirement.

In *Kenton County Board of Adjustment v. Meitzen*, 607 S.W.3d 586, (Ky. 2020), the Kenton County Board of Adjustment granted a conditional use permit for Jessica Swope and Aimee Glover to open a nursery school in a residential zone. Ian Meitzen and Donald Nageleisen, two adjoining property owners, initiated an administrative appeal pursuant to KRS 100.347(1).

> The complaint alleged that the Board's action was improper because it did not meet the requirements of the Kenton County Zoning Ordinance and certain statutory requirements. The complaint further stated that the subject location is on a very dangerous curve, posing risks to those in the vicinity. According to Meitzen and Nageleisen, Swope and Glover failed to meet the burden of proving that "the conditional use will not be detrimental to the health, safety or general welfare of persons residing or working in the vicinity . . . ." Additionally, Meitzen and Nageleisen stated that "to place a daycare facility in this area would put the general public and our school children in immediate and present danger."

*Meitzen*, 607 S.W.3d at 590. Unlike in the case before us, the complaint in *Meitzen* did not use the phrase "injured or aggrieved."

Swope, Glover, and the Planning and Development Services of Kenton County all moved for summary judgment arguing that Meitzen and Nageleisen did not claim that they had been injured or aggrieved by the actions of the Board; therefore, the circuit court was without jurisdiction to hear the case. The circuit court agreed.

-10-

[T]he circuit court entered an order of dismissal, finding that Meitzen and Nageleisen failed to allege in their complaint that they were injured or aggrieved by the final action of the Board. While the complaint alleged that Swope and Glover did not prove that the conditional use would not be detrimental to the health, safety and welfare of the community and that the Board failed to consider potential danger to children at a neighboring school, the complaint did not satisfy the "claim" of being "injured or aggrieved" requirements of KRS 100.347(1). Without an express claim that Meitzen and Nageleisen themselves were injured or aggrieved in some way by the Board's action, the circuit court concluded it lacked subject matter jurisdiction.

*Id.*

On appeal, the Court of Appeals reversed the circuit court in a 2-1 decision. The majority determined that "[t]here is nothing in the language of KRS 100.347(1) that requires appealing parties to specifically allege they were 'injured or aggrieved' in their complaint in order for the circuit court to have jurisdiction." The Court of Appeals interpreted the "injured or aggrieved" language to be a standing requirement, not a jurisdiction requirement.

*Id.* at 591.

The Kentucky Supreme Court then heard the case and utilized definitions for the terms "claim," "injured," and "aggrieved" that we find most helpful.

The parties contest what is required by the "claiming to be injured or aggrieved" portion of the statute. Where a statute is clear and unambiguous, "we are not free to construe it otherwise . . . ." *MPM Fin. Grp., Inc. v. Morton*, 289 S.W.3d 193, 197 (Ky. 2009).

-11-

Although KRS Chapter 100 does not provide definitions for "claiming," "injured," or "aggrieved," we look to the common meanings of these words to determine what the legislature intended when enacting KRS 100.347(1). Merriam Webster's Dictionary defines "claim" as "to assert in the face of possible contradiction," "to ask for," and "a demand for something due or believed to be due." According to Black's Law Dictionary (11th ed. 2019), "claim" has several meanings, such as "[t]he assertion of an existing right; any right . . . to an equitable remedy. . . ." It can also mean "[a] demand for . . . a legal remedy to which one asserts a right; esp., the part of a complaint in a civil action specifying what relief the plaintiff asks for." As for "injury," Merriam Webster defines it as "hurt, damage, or loss sustained," and as a "violation of another's rights for which the law allows an action to recover damages." Finally, "aggrieved" is defined as "suffering from an infringement or denial of legal rights," and "showing or expressing grief, injury, or offense."

*Meitzen*, 607 S.W.3d at 592 (footnotes and citations omitted).

Taking these definitions into consideration, the Court held "that a party pursuing an appeal from a board of adjustment must claim some type of hurt or damage, or some form of suffering or infringement that the party will experience as a result of the board's decision." *Id.* at 592-93. Further, the Court concluded,

Meitzen and Nageleisen failed to provide any factual allegations to support a claim that they themselves were injured or aggrieved in some way by the Board's action. In fact, the words "injured" or "aggrieved" (or even synonyms of those words) do not appear anywhere in their complaint. While these particular words are not necessarily required, a complaint pursuant to KRS 100.347(1) must reflect how the plaintiff fits into the

-12-

statutory language authorizing an appeal. Meitzen and Nageleisen explain how they believe the Board erred legally, but they fail to state how the alleged errors affect them or cause injury to them. In fact, the complaint reads solely as a critique of the Board's decision to grant the conditional use permit, not as a claim on behalf of parties who are themselves injured or aggrieved.

*Id.* at 593. We would also note that the claims raised in Meitzen and Nageleisen's complaint focused on the community in general and not them specifically. The Court also reiterated that adhering to the requirements of KRS 100.347(1) was a jurisdictional issue.

Based on *Meitzen*, Appellant would need to mention specifically how it was injured or aggrieved by the Board's decision. Appellant argues that *Meitzen* is distinguishable because the complainants in *Meitzen* did not use the phrase "injured or aggrieved," whereas Appellant did. We disagree with Appellant based on the overall holding in *Meitzen* and due to our Supreme Court's recent decision in *Louisville Historical League, Inc.*, *supra*.

In *Louisville Historical League, Inc.*, the Historic Landmarks and Preservation Districts Commission designated a building in downtown Louisville, Liberty Hall, an architectural landmark. The Louisville/Jefferson County Metro Council reviewed the decision and concluded Liberty Hall was not a landmark. The Historical League appealed to the Jefferson Circuit Court pursuant to a local

-13-

ordinance, Louisville Metro Code of Ordinances (LMCO) § 32.263(C). LMCO § 32.263(C) states:

> An appeal from the Council shall be taken by *any person or entity claiming to be injured or aggrieved by the final action* of the Council to the Jefferson Circuit Court within 30 days of the Council's final action, which shall be defined as the date on which the Council votes to uphold, amend, or overturn the decision of the Commission on the proposed designation.

*Louisville Historical League, Inc.*, 709 S.W.3d at 220 (emphasis in original). The circuit court reversed the decision of the Metro Council; however, the issue of jurisdiction was not raised. Jurisdiction was raised for the first time at the Court of Appeals.

In its opinion, the Court of Appeals discussed *Meitzen* and KRS 100.347(1), and compared them to LMCO § 32.263(C). "[T]he Court of Appeals held the ordinance requires an appealing party to provide factual allegations in their complaint stating how they were particularly injured, aggrieved, or harmed by the decision of the administrative entity." *Louisville Historical League, Inc.*, 709 S.W.3d at 220 (internal quotation marks omitted). The Court of Appeals then analyzed the complaint and found the Historical League did not show how it was particularly injured or aggrieved by the Council's decision. *Id.* at 221. The Court of Appeals held that the Historical League only claimed disappointment with the decision and, at most, claimed there was injury or harm to the general public. *Id.*

-14-

at 220. We note the Historical League used the phrase "injured and/or aggrieved" in its complaint. *Louisville/Jefferson Cnty. Metro Government v. Louisville Historical League, Inc.*, No. 2023-CA-0082-MR, 2023 WL 8286940, at \*3 (Ky. App. Dec. 1, 2023), *review granted* (Jun. 5, 2024), *rev'd*, 709 S.W.3d 213 (Ky. 2025).

Our Supreme Court then granted discretionary review. Unfortunately, the Court did not analyze the merits of the jurisdictional issue because it concluded the particular-case jurisdiction issue had been waived as it was not raised before the trial court. *Louisville Historical League, Inc.*, 709 S.W.3d at 223. For our purposes, however, we acknowledge that the panel of the Court of Appeals which heard the case held complainants need to particularize their injuries or harms in the complaint. Further, the Supreme Court discussed the Court of Appeals' decision in great detail and did not cast any doubts upon the conclusion. We find these facts persuasive.

If we examine KRS 100.347(1), *Meitzen*, and *Louisville Historical League, Inc.* together, we conclude that a complainant needs to do more than simply state he or she was injured or aggrieved in its complaint. The complaint must also indicate how or why the complainant was injured or aggrieved. After examining the complaint in the case at hand, as well as the definitions of "claim," "injury," and "aggrieved" cited previously, we agree with Appellant that it set forth

-15-

sufficient reasons indicating why it was injured or aggrieved.  Paragraph two of the

complaint states:

> The [conditional use permit] approval failed to follow the
> procedures required by KRS Chapter 100.203, *et seq.* and
> the Madison County Land Development Code 2.02(c)(iv)
> and 3.07(g)(iv).  In addition, the [conditional use permit]
> approval fails to comply with the Madison County
> Comprehensive Plan, violates the Madison County Land
> Development Regulations, and it fails to adhere to the
> requirements of KRS Chapter 100 generally.  The
> Proposed Development is a threat to the health, safety,
> and welfare of nearby residents and farmers, including
> members of Preserve Madison County, LLC.

In other words, the complaint states that by granting the permit to build the

bourbon facilities, the Board's decision is a threat to the health and safety of

members of Appellant.

> In addition, paragraph thirty-nine of the complaint states:

> The Board acted arbitrarily and without authority by
> approving the [conditional use permit] without
> reviewing, and in direct violation of Land Development
> Regulations Article 2, Section 2.02(c) and Article 3,
> Section 3, especially where the new proposed industrial
> development will create odor, noise, and other
> environmental nuisance conditions for neighboring
> residents and land uses.

This paragraph indicates the Board's approval of the permit will cause various

environmental nuisances.  While this paragraph uses the term "residents," we

believe, in this case, it is specific enough to be referring to members of Appellant.

Paragraph four of the complaint indicates Preserve Madison County Co. is made

up of residents of Madison County; therefore, we believe paragraph thirty-nine is referring to injuries caused to members of Appellant. Had this complaint been filed by specifically named people, as in *Meitzen*, it is possible that a reference to "residents" would have been too general so as to apply to specific people. That is not the case here. This case was brought by a group of residents in Madison County under the umbrella of a non-profit organization; therefore, the use of the term "residents" is appropriate.

In summary, we believe that Appellant has sufficiently claimed that it and its members were injured or aggrieved by the final decision of the Board. The circuit court's decision to dismiss the case based on jurisdictional grounds was error; therefore, we reverse and remand.

Appellant's next argument on appeal is that the circuit court erred by dismissing its declaratory judgment action against the Madison County Fiscal Court. We agree. Aside from the statutory appeal brought pursuant to KRS 100.347(1), Appellant also sought a declaratory judgment against the Madison County Fiscal Court. Appellant claimed that the Fiscal Court's 2023 land use regulations amendment, which authorized the construction and operation of bourbon distilleries and bourbon barrel storage facilities as conditional uses in its

agricultural district, was facially unlawful and violated the Madison County

Comprehensive Plan.[3]

Generally, a separate declaratory judgment action would not be viable

when it concerns issues that relate to a specific statutory right to appeal, such as

KRS 100.347(1). *Warren Cnty. Citizens for Managed Growth, Inc. v. Board of*

*Comm'rs of City of Bowling Green*, 207 S.W.3d 7, 17 (Ky. App. 2006). For

example, Appellant's complaint also requested declaratory judgment against the

Board due to it approving the permit, but those declaratory judgment claims would

be subsumed into the KRS 100.347(1) appeal and would not be allowed as a

separate action. Appellant's declaratory action against the Madison County Fiscal

Court, on the other hand, is still viable.

KRS 100.347(3), like KRS 100.347(1), allows an appeal to be taken

from a final zoning action of a fiscal court. If Appellant were appealing a final

zoning action from the fiscal court, then a separate declaratory action would not be

viable; however, that is not the situation here. Appellant is not appealing a zoning

change by the fiscal court but is claiming that a new regulation is unlawful.

Appellant's declaratory judgment action against the Madison County Fiscal Court

is a separate and distinct action brought pursuant to KRS 418.040 and KRS

---

[3] The Madison County Comprehensive Plan identifies programs and projects that are suitable for the development of property in the Madison County community. KRS 100.183.

-18-

418.045; therefore, it should not have been dismissed. Even if we had found the court was without jurisdiction to consider an appeal from the Board's decision, Appellant could still have maintained its declaratory judgment action against the fiscal court.

Appellant's final argument on appeal concerns Revolution Holdings' counterclaim and Appellant's Uniform Public Expression Protection Act claims. The trial court deemed the counterclaim, and the Uniform Public Expression Protection Act claims as moot due to lack of jurisdiction. Because we have held there was jurisdiction in this case, these issues are no longer moot and should proceed accordingly.

## **CONCLUSION**

Based on the foregoing, we reverse and remand. Appellant provided sufficient claims of injury or aggrievement to satisfy the particular-case jurisdictional issue and its case was erroneously dismissed. Appellant's claims should be allowed to proceed.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Randal A. Strobo
Clay A. Barkley
Timothy J. Mayer
Julia D. Taylor
Louisville, Kentucky

BRIEF FOR APPELLEES MADISON
COUNTY FISCAL COURT AND
MADISON COUNTY BOARD OF
ADJUSTMENTS:

D. Barry Stilz
Lynn Sowards Zellen
James E. Yeager III
Lexington, Kentucky

BRIEF FOR APPELLEE
REVOLUTION HOLDINGS, LLC:

Ethan F. Johnson
Lexington, Kentucky

NO BRIEF FOR MADISON FARM,
LLC.